# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JANETTE POLLARD,                                        Case No. 1:11-cv-186

      Plaintiff,                                            Dlott, C.J.
                                                             Bowman, M.J.

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Janette Pollard filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

### I. Summary of Administrative Record

In June 2005, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging a disability onset date of January 1999 due to diabetes, back pain, carpal tunnel syndrome, and arthritis. (Tr. 55-57, 60, 373). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An administrative hearing was held on March 12, 2008. (Tr. 417-52). At the hearing, ALJ William Hafer heard testimony from Plaintiff and Donald Shrey, Ph.D., an impartial

1

vocational expert. On August 29, 2008, the ALJ denied Plaintiff's application in a written decision. (Tr. 21-30).

The record on which the ALJ's decision was based reflects that Plaintiff has a limited education and past relevant work as a house cleaner. (Tr. 28-29). Plaintiff was born in 1960 and was 38 years old on the alleged disability onset date. Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "disc space narrowing of the lumbar spine, status post laminectomies; diabetes mellitus with peripheral neuropathy and diabetic retinopathy; obesity, charcot deformity of the foot; degenerative changes of the left knee; status post bilateral carpal tunnel release procedures; and dysthymia." (Tr. 23).

Despite these impairments, the ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, with the following exceptions:

> She can sit for one hour at a time for eight hours per day, provided that she may stand for three to five minutes after each hour of sitting; she can stand and/or walk for one hour at a time for eight hours per day, provided that she may sit for three to five minutes after each hour of standing and/or walking; and she can occasionally stoop, kneel, crouch, crawl and climb stairs; but never climb ladders, ropes, or scaffolds; never work at unprotected heights; and never work around dangerous machinery. Additionally, she is limited to unskilled work that does not require adherence to rigid deadlines or high production standards, and in which there is no more than superficial contact with supervisors, co-workers, and the public.

(Tr. 25). Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national/regional economy that claimant can perform" such as packager, bench assembler and polisher. (Tr. 29). Accordingly, the ALJ determined

2

that Plaintiff was not under disability, as defined in the Social Security Regulations, and was not entitled to DIB or SSI. (Tr. 30).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ improperly weighed the medical opinions of record. Plaintiff argues next that the ALJ failed to properly analyze whether Plaintiff's meets Listing 9.08A. As discussed below, the Court finds the ALJ's decision is not supported by substantial evidence and should be remanded.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for DIB or SSI a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period,

he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

### B.  Specific Assignments of Errors

*1. ALJ's weighing of the opinion evidence*

Plaintiff's statement of errors asserts that the ALJ's RFC finding is not supported by substantial evidence because he improperly weighed the opinion evidence of record. Specifically, Plaintiff argues that the opinions of Dr. Collins, Dr. Glaser, and Dr. Schussler were entitled to controlling weight.  The ALJ's analysis of each opinion will be addressed in turn.

*A.     Relevant Opinion Evidence*

The record indicates that Plaintiff treated with Dr. Collins, from October 1999 to June 2005.  (Tr. 139).  In December 2005, Dr. Collins completed a questionnaire at the request of the state agency wherein he listed Plaintiff's diagnoses as diabetes, neuropathy, and depression. (Tr. 139).  He opined that Plaintiff was "unable to perform sustained activity especially in a group or stressful situation." (Tr. 140).  The ALJ gave "little weight" to Dr. Collins' conclusion that Plaintiff was unable to sustain employment. (Tr. 27).  The ALJ found that Dr. Collins' "conclusion was not based on signs, findings, or other objective evidence."  (Tr. 21-22).

In August 2005, Dr. Glaser, a consulting physician, performed a physical examination of Plaintiff and found that she was "capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects."  (Tr. 173).  She also opined that Plaintiff "would have

5

some difficulty reaching overhead, but has no difficulty grasping and handling objects," and that Plaintiff "is also capable of performing sedentary work activities commensurate with her age" (Tr. 173). ALJ Hafer gave limited weight to Dr. Glaser's opinion because "the weight of the evidence in the record does not support finding limitations on reaching or the reduction of standing and walking that is typical of sedentary work." (Tr. 27).

In March 2008, Dr. Schussler provided a handwritten note indicating that he was treating Plaintiff for diabetic neuropathy and "charcot foot," and opined that Plaintiff was not "employable at this time due to this condition" (Tr. 314). ALJ Hafer gave "little weight to Dr. Schussler's opinion as it is not supported by specific functional limitations and the determination or decision of disability is an administrative finding that is expressly reserved to the Commissioner (Tr. 28, citing 20 C.F.R. § 404.1527).

In formulating Plaintiff's RFC finding, the ALJ rejected these opinions and instead relied on the findings of Dr. Johnson, a consulting physician, who examined Plaintiff in September 2000, and two state agency physicians who reviewed Plaintiff's medical file in August 2005 and February 2006. Notably, Dr. Johnson found that Plaintiff had diminished sensation to pinprick in the left foot to the ankle, decreased straight leg raise, decreased range of motion of her hips, and crepitance in both knees. (Tr. 122). A lumbar x-ray showed narrowing at L4-5. (Tr. 124). Dr. Johnson diagnosed degenerative disc disease of the lumbar spine and opined that Plaintiff's ability to do work-related activities was "diminished." (Tr. 123).

Additionally, in August 2005, state agency physician Arthur Sagone, Jr., M.D., reviewed the file and assessed that Plaintiff could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an

eight-hour workday; could sit about six hours in an eight-hour workday; could never climb ladders/ropes/scaffolds or crawl; and could occasionally balance, stoop, crouch, kneel, and climb ramps/stairs. (Tr. 179-86). In addition, he assessed that Plaintiff "would have some difficulties doing overhead reaching per consultant." (Tr. 180). Also in February 2006, state agency physician Maria Congbalay, M.D., reviewed the file and affirmed Dr. Sagone's August 2005 physical RFC assessment. (Tr. 186).

Plaintiff argues that the ALJ failed to properly explain the weight assigned to the various opinion statements and also unreasonably relied on the opinions of the state agency reviewing physicians, as such opinions were not well supported by the evidence.

B. *Applicable Law*

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician*. Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

7

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Furthermore, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your

impairment(s)", opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Additionally, as a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F. Supp.2d 845, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-46 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb. 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Services*, No. 86-5875, 1988 WL 34109 at *2 (6th Cir. April 18, 1986) (*quoting Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (court cannot uphold the decision of the ALJ, even where there may be sufficient evidence to support

9

the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result").

*Dr. Collins*

Plaintiff argues first that Dr. Collins' opinion was entitled to controlling weight because it is "supported by a wealth of positive objective findings found within the many physical examinations he performed on Plaintiff, including tenderness to palpation, reduced range of motion, decreased sensation in her feet and hands, crepitus, and edema." Plaintiff further asserts that Dr. Collins' opinion is supported by the objective findings of other treating and examining physicians, including Drs. Zisko, Linz, Rhoad, Yun, Glaser, and Johnson. (Tr. 121-122, 171-172, 260-261, 263-312).

Here, the ALJ discounted Dr. Collins' disability assessment because it "was not based on signs, findings, or other objective evidence." (Tr. 21-22). Notably, the June 2005 questionnaire asked Dr. Collins to "describe all pertinent findings on clinical examination (with dates related to the patient's condition." He responded, *in toto*, "peripheral neuropathy - before 1999." (Tr. 139). Further, when asked to provide any available consultive/diagnostic testing that you have on file regarding the patient's condition," Dr. Collins wrote "N/A." *Id.* Finally, as noted above, when asked to describe Plaintiff's functional limitations, Dr. Collins stated that Plaintiff was "unable to perform sustained activity especially in a group or stressful situation." (Tr. 140).

Thus, it appears that the ALJ reasonably discounted Dr. Collins conclusory assessment based upon the lack of information Dr. Collins provided on the assessment form. *See also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994))

(holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

*Dr. Schussler*

Plaintiff argues next that the ALJ failed to adequately explain his rational in rejecting Dr. Schussler's opinion. As noted above, the ALJ gave "little weight to Dr. Schussler's opinion as it is not supported by specific functional limitations and the determination or decision of disability is an administrative finding that is expressly reserved to the Commissioner. (Tr. 28, citing 20 C.F.R. § 404.1527). The undersigned finds that ALJ's decision to be reasonable in this regard. Notably, the only record evidence from Dr. Schussler is a handwritten note dated March 11, 2008, which states, *in toto*:

> Please acknowledge that Janette Pollard is under my care for diabetes neuropathy and charcot foot. This is a severe debilitating condition and may result in complete loss of sensation of the feet. I don't feel that this patient is employable at this time due to this condition.

(Tr. 314).

The record does not contain any additional supporting information from Dr. Schussler, such as treatment notes, clinical findings or diagnostic testing. In these circumstances, the undersigned finds that the ALJ reasonably discounted this opinion. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003 ("if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for [his] rejection.").

*Dr. Glaser*

Plaintiff's last argument asserts that the ALJ erred in discounting the findings of Dr. Glaser. The undersigned agrees.

11

As detailed above, Dr. Glaser consultatively examined Plaintiff in 2005. Dr. Glaser determined that Plaintiff was "capable of performing a mild to moderate amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (Tr. 173). She also opined that Plaintiff "would have some difficulty reaching overhead, but has no difficulty grasping and handling objects," and that Plaintiff "is also capable of performing sedentary work activities commensurate with her age" (Tr. 173). ALJ Hafer gave limited weight to Dr. Glaser's opinion because "the weight of the evidence in the record does not support finding limitations on reaching or the reduction of standing and walking that is typical of sedentary work." (Tr. 27). Upon careful review, the undersigned finds that the ALJ's decision in this regard is not substantially supported.

The record contains numerous objective findings to support the conclusion that Plaintiff has significant limitations in her ability to stand and walk. As noted by Plaintiff, Drs. Yun and Zisko treated Plaintiff for her foot pain beginning in October 2006, at which point she had left heel pain which was worsened with activity, and examination revealed an antalgic gait, palpable tenderness at the plantar aspect of her left heel, and decreased sensation to the soles of both feet; these physicians diagnosed Plaintiff with plantar fasciitis of the left foot and diabetes with peripheral neuropathy bilaterally (Tr. 299-300). In March 2007, Dr. Linz found that Plaintiff's ankle continued to have tenderness to palpation, effusion, reduced range of motion, and weakness (Tr. 273). An MRI of Plaintiff's left knee on March 30, 2007 revealed moderate prepatellar echymosis or bursitis and a "fairly high grade chondromalacia patella" with tiny tears suspected in each meniscus. (Tr. 272). An MRI of Plaintiff's left ankle was performed on the same day; it revealed thickening of the anterior talofibular ligament, likely relating to a

previous partial tear; chronic-appearing ununited ossicle deep to the medial malleolus; a 2 mm area of subchondral edema within the tibial plafond which could relate to a developing osteochondral defect; a full-thickness tear of the plantar fascia; mild diffuse soft tissue swelling; and mild arthropathy throughout the midfoot. (Tr. 271). In May 2007, Dr. Linz observed that Plaintiff had decreased motion in her ankle, especially over the medial side, a moderate effusion, and absent sensation to monofilament in her feet. (Tr. 266). By July 2007, Dr. Linz diagnosed Plaintiff with Charcot foot[1] and he prescribed a lace-up ankle boot. (Tr. 264).

Moreover, at step two of the sequential analysis, the ALJ noted the findings of Plaintiff's 2007 MRI of the left knee. (Tr. 24). The ALJ also noted that Dr. Linz assessed "possible charcot deformity of the left ankle/foot." *Id*. The ALJ did not address the MRI findings related to Plaintiff's ankle nor Dr. Linz' formal diagnosis of charcot foot in July 2007. Yet, the ALJ determined that Plaintiff's degenerative changes in the left knee and charcot deformity were severe impairments. (Tr. 23). Despite this finding, there is no indication from the ALJ's decision that he properly considered the objective evidence and/or any functional limitations relating to Plaintiff's knee and ankle pain in his evaluation of the opinion evidence.

Likewise, the record includes evidence that would support Dr. Glaser's limitations in reaching. Plaintiff treated with Dr. Linz as early as January 2005 for left shoulder pain, at which time he diagnosed "persistent symptomatic left shoulder rotator cuff

---

[1]Charcot foot is a softening of the bones of the foot that occurs in people with severe peripheral neuropathy. Their muscles lose the ability to support the foot, leading to a slackness of ligaments, dislocation of joints, damage to bone and cartilage, and deformity. The bones slip out of position and then push on the soft tissue, breaking it down and leading to ulcers. The patient, unable to feel the pain that warns healthy people of injury, continues to walk on the broken foot, exacerbating the damage. (Doc. 1- at 5) (citing http:// www.diabeteshealth.com/ read/ 2007 /10 /11/5494/ charcot-foot-a-story-of-foot-reconstruction/.

13

tendinitis with impingement and AC degenerative joint disease." (Tr. 261). Radiographs confirm the degenerative changes over Plaintiff's left AC joint. *Id.* Moreover, Dr. Glaser's examination of Plaintiff revealed decreased range of motion in her arms, decreased grip strength, and diminished pinprick and light touch sensation over her hands. (Tr. 171-172, 175). Furthermore, the state agency reviewing physicians, whose opinions the ALJ relied upon in formulating Plaintiff's RFC, also agreed that Plaintiff's ability to push and/or pull was limited in the upper extremities, and that she would have difficulty reaching overhead. (Tr. 180, 182). The ALJ, however, failed to discuss these findings, and/or explain why he rejected such limitations.

As noted above, the ALJ gave limited weight to Dr. Glaser's opinion because "the weight of the evidence in the record does not support finding limitations on reaching or the reduction of standing and walking that is typical of sedentary work." (Tr. 27). However, other than this lone sentence, the ALJ does not provide any additional analysis relating to this finding nor identify "the weight of the evidence" that is against Dr. Glaser's reaching, standing and walking restrictions. To the contrary and as outlined above, the record contains numerous findings to support such limitations.

The Commissioner cites to evidence in the record supporting the ALJ's conclusion that Dr. Glaser's findings were against the weight of the evidence. However, the ALJ's decision does not provide any such analysis. Without a discussion of such evidence, the Court is unable to determine if the ALJ properly discounted Dr. Glaser's assessment because it was not supported by substantial objective evidence. *Wilson*, 378 F.3d at 544-45.

The undersigned recognizes that it is the duty of the ALJ, and not the Court, to weigh the medical evidence. However, the ALJ's failure to explain his rational for

rejecting Dr. Glaser's findings and to provide a substantive basis for rejecting her reaching, sitting and standing limitations prevents the Court from engaging in meaningful review of the ALJ's decision. *See Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained"). Accordingly, this matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

*2. Listing 9.08*A

Plaintiff's second assignment of error asserts that the ALJ failed to properly analyze and explain his determination that Plaintiff did not meet or equal Listing 9.08A. Listing 9.08A states that a person will be found disabled if that person suffers from diabetes mellitus with "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." 20 C.F.R. Pt. 404, Sutpt. P § 9.08A. [2]

Plaintiff argues that she meets the listing requirement as the record indicates that she has been diagnosed with diabetic neuropathy by several treating physicians (Tr. 145, 149, 236, 241, 245, 252, 254, 256, 258, 311, 314). Objective findings indicate that

---

[2] In order to qualify as "disabled" under a Listing in the Secretary's regulations, a claimant must demonstrate that he or she meets *all* of the criteria contained in the Listing. *See Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 855 (6th Cir.1986). Alternatively, "[a] claimant can demonstrate that she is disabled because her impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to all the criteria for the one most similar listed impairment.' " *Foster v. Halter,* 279 F.3d 348, 355 (6th Cir.2001) (quoting *Sullivan v. Zebley,* 493 U.S. 521, 531, (1990)).

15

this condition results in a loss of sensation, reduced strength, poor balance, and gait abnormalities (Tr. 121-122; 171-172; 279, 299-230, 304, 307-308). Plaintiff further argues that the ALJ's decision in this regard is not supported by substantial evidence because the ALJ failed to provide a detailed analysis about how he reached this conclusion.

Here, the ALJ's decision indicated that he considered Listing 9.08A, but determined that "the signs and findings related to these impairments do not meet listing level severity, even when considering obesity, pursuant to Social Security Ruling 02-1p." (Tr. 24). The ALJ did not identify any objective evidence, nor provide any additional explanation for this conclusion. The undersigned agrees that the ALJ's failure to clearly articulate the rationale underlying his determination that Plaintiff did not meet this listing was clear error.

The Commissioner argues that the ALJ's analysis of Listing 9.08A should be affirmed as currently written because "the Sixth Circuit has required minimal articulation at step three of the sequential analysis." (Doc. 13 at 10) (citing *Ayende v. Comm'r of Soc. Sec.*, 08-19 (E.D. Tenn. March 3, 2009) (Mattice, J.) (citing *Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (minimal articulation required at step three). However, this argument was recently rejected by this Court. *See Risner v. Commissioner of Soc. Sec.,* No. 1:11-cv-36, 2012 WL 893882 *3 (S.D. Ohio March 15, 2012) (the idea that *Price* requires only minimal articulation at step three when applied to an appeal for benefits by a wager earner is misplaced).

To the contrary, in *Reynolds v. Comm'r of Soc. Sec.*, 424, F. App'x 411 (6th Cir. April 1, 2011)(unpublished), the Sixth Circuit set forth the requirements for an ALJ's Step Three analysis as follows:

> The ALJ needed to actually evaluate the evidence, compare it to ... the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.

*Id.* at 415.

Furthermore, it is well established that to be entitled to substantial deference...[an ALJ's non-disability finding] must clearly articulate the rationale underlying the decision. *See Hurst,* 753 F.2d at 519. In *Hurst*, the court discussed the articulation necessary to support an ALJ's decision regarding disability benefits. The Court stated: "[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is *absolutely essential* for meaningful appellate review." *Hurst*, 753 F.2d at 519 (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984)).

Here, the ALJ's failure to properly evaluate the medical evidence and compare it to the requirements of Listing 9.08A prevents the Court from engaging in meaningful review of the decision in this regard. Accordingly, the undersigned recommends that the remand is also warranted for a more thorough Step Three determination.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the

Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB and SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to properly consider whether Plaintiff's impairments meet or equal Listing 9.08A, properly assess and evaluate the opinion evidence and provide a clear explanation for the conclusions reached therein.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

      *s/Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

JANETTE POLLARD,                                           Case No. 1:11-cv-186

        Plaintiff,                                        Dlott, C.J.
                                                         Bowman, M.J.
    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).